Okay, they look ready. May it please the court. My name is Alice Curegan and I represent plaintiff appellants Linny and Melissa Staggs in the matter of Staggs v. Doctor's Hospital of Manteca. I would like to reserve three minutes for rebuttal. Please just watch your own time. The clock will count down. Thank you. This court should reverse the lower court's holding for the following three reasons. First, plaintiffs pled sufficient facts to state a cognizable claim for deliberate indifference against SCC health care providers. Second, plaintiffs pled sufficient facts to state a cognizable claim for deliberate indifference against SCC supervisors. And third, plaintiff's complaint satisfies the plausibility requirements under the Twombly-Iqbal pleading standards. With regard to my first argument, plaintiffs pled sufficient facts to state a cognizable claim for deliberate indifference against SCC health care providers. As this court knows, a serious medical need. Second, the knowledge and disregard of a substantial risk of harm to plaintiff's health or safety. Maybe, forgive me for interrupting, maybe you could clarify one thing that I wasn't totally clear on. When he finally goes for the biopsy, two hospitals refuse to do it. How do they communicate that and to whom? I believe they communicated that to Defendant Karpan and by default Defendant Sinclair, who is the chief medical officer, who would be in charge of consultative outside service procedures. This is not a summary judgment motion, so forgive me for interrupting. Perhaps we have the same follow-up question. Does the complaint allege that? Yes, Your Honor. Where? I'm looking for knowledge, the Defendant's knowledge that the hospitals have refused. With regard to the Defendant's knowledge, it's ER 34, paragraphs 52 to 53. It says in our regional medical center. So I'm sorry, you're just speaking a little bit quickly, so it's hard to understand you. Did you say ER 34? ER 34, paragraphs 52 to 53. Great. That's all I need and let me just ask you to then direct your attention back to Judge Rakoff's question. Well, then the follow-up question is, I think this is going to ask you about the transfer then to the correctional officer's van after he went to the, actually had the biopsy, which you allege was, you know, he was instructed to stay for three hours, I think, and instead they took him away. Now, I just want to be sure, I haven't gone back to the complaint, but I think this is in the complaint, that that was on the demand of the correctional officers that he entered the van. Yes, Your Honor. I think, I believe it is clear that the correctional officers insisted that he leaves despite the universal protocol that he should lie down on his side for three to four hours in order to staunch the bleeding. And to further allege that this was deliberate indifference, in terms of the biopsy, Mr. Staggs had ascites fluid in his peritoneal cavity, which is the reason why the two independent hospitals refused to conduct this procedure. Now, the reason why... Is that in the complaint? Yes, Your Honor. That is, again, ER 34. I'm looking at paragraph 52, which I think you just called my attention to, and I don't see where it says that the defendant physicians were made aware of the prior doctor's, sorry, hospital's refusal to conduct the test. It says they refused to conduct it. But my question might not have been clear. I'm just trying to figure out whether your amended, third amended complaint indicates that the physicians were made aware of that fact. Your Honor, I believe that a reasonable inference can be made that they were made aware of that fact at this pleading stage, given the fact that it was Defendant Karpan who ordered the biopsy, and he was the one who contacted, presumably contacted, these two independent hospitals. And they would have, by the fact that they refused to do the biopsy, that they would have informed at least Defendant Karpan. Is it your client's position that the, it seems like it is, but just to be clear, that the test was, this type of biopsy was medically appropriate at the time it was ordered, but then after it became apparent that there might be a lesion, that there should have been a change of, they should have changed direction. Is that right? Yes, Your Honor. That is, when the biopsy was first ordered in October, it seems that it might have been medically acceptable. So, going back to the earlier, I take it, paragraph 53, you say, following the refusal of the evaluating physicians at two separate medical facilities, Defendants D.H.M., Sata, Karpan, Allen, St. Clair, and Dose still opted to do a three-pass core liver biopsy rather than a fine needle aspirate of the lesion. And I take it your argument is we, reading the complaint, as we must on this present status, most favorably to you, that implicit in that sentence is the allegation that they do about the prior two refusals. Yes? Yes, Your Honor. Okay. Just want to make sure that when I give you a softball question there, you answer yes. Okay. Thank you. Okay, so now can we go back to the other question? I know I'm interrupted, but you were making a statement about the reason this was a problem is that he had fluid in his peritoneal cavity. And I asked, is that in the complaint? Yes, Your Honor, because the two hospitals, going back to that paragraph, I believe the two hospitals cited concerns over the presence of ascites fluid in the peritoneal cavity. So, I think you've answered my question. Go right ahead. With regard to my first argument where my argument that plaintiffs have pled sufficient facts to show that these defendants knew that Mr. Staggs was suffering from a serious medical condition, given its subjective nature, knowledge can be inferred from circumstantial evidence, which is especially important here at the pleading stage. The lower court held that because these plaintiffs had gone to these defendants for over nine months and he was repeatedly given pain medication in the interim, that they were not deliberately indifferent. However, repeated examinations and assessments do not absolve prison officials of liability if the gravamen of the prisoner's problem is not addressed, nor does a prisoner or a plaintiff need to show that he was literally ignored in order to plead deliberate indifference. So, how was the testing that followed his complaints of pain not addressed? In the tests that occurred, you know, the MRI and the contrast MRI, what is it they, how does this record demonstrate deliberate indifference? Well, Your Honor, his complaints of pain were not addressed and how that could be showed is because he repeatedly came back complaining that his pain was not only subsiding, but in fact it was intensifying. And they repeatedly sent him away with the same exact pain medication. They didn't even try to change the pain medication in order to see maybe if a different kind of pain medication would resolve his pain. Moreover, it is our position that by June 2009, at the very least, that they knew plaintiff Mr. Staggs was suffering from liver disease. And that's evident by the fact that his medical records show that he had hepatitis C, cirrhosis, and by June 2009, his AFP levels showed a drastic spike in, his blood tests showed a drastic spike in AFP levels, which has a direct relationship with the onset of HCC. So by June 2009 to January when they conducted the biopsy, they essentially delayed his treatment with the knowledge that he was suffering from liver disease. This court has repeatedly held that delay of medical treatment can amount to deliberate indifference. Further, with regard to the biopsy, it is our position that we have pled sufficient facts to show that these defendants knew of the substantial risk of harm to Mr. Staggs, not only because two independent hospitals refused to do this biopsy, citing specific concerns over its safety, but also given the fact that these defendants are licensed physicians, they should have known, or it is our position at this pleading stage, that they did know that liver biopsies cause an immense amount of bleeding, that cirrhotic livers such as Mr. Staggs' does not have the appropriate enzymes to stop the bleeding, and that lesions such as the five-centimeter lesion that was discovered before this biopsy was conducted is highly vascular. And essentially when they proceeded to do this biopsy, they essentially eradicated any chance of survival that Mr. Staggs would have. Can I ask you one question that I suspect might not be in the record, but if you know, I'd be just curious. What is the advantage of the three-pass biopsy over the, what is the other one, the fine needle? You know, there's these two, and you're saying that your client should have gotten the less risky one. Do you know anything about, is there some great medical advantage to the three-pass one, which is perhaps why the doctors thought that that was the preferable route, notwithstanding the risk? I'm sorry, Your Honor. I do not know the exact medical advantages for the three-pass biopsy, but that leads to my third point that because this is a pleadings case, we haven't proceeded with discovery. We do not know enough information, and this is why it's so premature to dismiss this case at such an early stage. Further, with regard to my second point, plaintiffs have pled sufficient facts to state a cognizable claim for deliberate indifference against SEC supervisors. As this court knows, a claim for deliberate indifference against supervisors needs to show either their personal involvement or a sufficient causal connection. Here, with regard to both defendants, St. Clair and Allen, we have pled personal involvement as evident by the fact that they approved this biopsy on January 14, 2010. And after this, the CT scan from December 26, 2009 showed a lesion. And in addition, we pled personal involvement by the fact that after this biopsy on January 23, they approved Mr. Stags' release without any supervision for his safety or for his complaints from the OHU. Sorry, he was taken to the OHU and they released him without any supervision, just the day after, without conducting any tests to see if he was internally bleeding, despite the fact that he repeatedly stated that he had immense pain in his upper abdomen area. Further, with regard to St. Clair, we have pled that he personally denied Mr. Stags' 602 appeal, despite the fact that he knew, based on the appeal, that his pain was intensifying and not enough was being done for him. And with that, I would like to reserve the rest of my time. Thank you. Sure. Thank you. Good morning. May it please the Court, I'm Kathleen Borges with the California Attorney General's Office. I represent the Appellee Prison Medical Defendants, Drs. Allen, Bangi, Kirpan, and St. Clair, and Physician's Assistant Benak. I'll be dividing my time with my colleagues who represent the other defendants. They'll argue for three minutes each. Maybe you could just go straight to the biopsy. I think all of us would, including you, would probably agree that that's the most troubling of the allegations because you have these two hospitals who seem to suggest that under no circumstances would they even consider performing this procedure, given the condition of the patient. And that sounds like, at the pleading stage, I'm not sure what else you could allege as a plaintiff to show that a procedure was medically unacceptable. That's the standard that our case has set in this context. So I'm very interested to hear your response to that particular set of allegations. Well, I think that actually this situation is sort of your classic difference of medical opinion, even though I do agree that we did end up with a very serious and catastrophic result. I think when you look at the cases about difference of medical opinion, they show that really what is needed is something more than a difference of medical opinion. At the summary judgment stage, that might be exactly what happens in this case. But how do we know at the summary judgment stage that what we wouldn't find is that there is uniform agreement, that in this particular circumstance, once a lesion shows up, that it is below the standard of medical care to go forward with this type of biopsy? I mean, we're just at the pleading stage. Right, and at the pleading stage, what we have is allegations that two hospitals, who there's no allegation that they've ever treated the plaintiff, that they ever reviewed his file. The only allegation is that they refused to perform the biopsy. That's not quite right, because the complaint does say this is the specific reason the hospital cited it, as to why they wouldn't do the procedure, and it corresponds with the condition that the plaintiff was in, right? So they must have had some basis for knowing that this particular patient that we're being asked to do this procedure on has some condition that makes this procedure way too risky for us to even want to do it. Well, there is definitely somewhat of an inference from that, from the allegations. But I would compare this to a case like Hamilton or Snowbee McDaniel, where what you have is the court saying, okay, you have the treating physician recommending a course of action. In Hamilton, you also had an outside specialist who had specifically examined the plaintiff, and they both said, this is the course of treatment we recommend. And then the prison review panel, for no medical reason, denied that care. Yeah, but this is not for no medical reason. So let's say the doctor makes a recommendation, and we'll say two reasonable doctors might have disagreed. But he makes the recommendation. They then take him to hospital number one, and the hospital says, you've got to be kidding. This is much too dangerous. So they go to hospital number two, and hospital two says, give me a break. This is going to kill the poor guy. I'm exaggerating, of course. But that's not the case. And then they just go, well, that's fine, hospital number three. Why is that not deliberate indifference? Because you have the treating physician who recommended doing the procedure. Then you have two doctors who reviewed it and approved it. Yeah, all before that. The guys who recommended initially, that was before the lesion showed up, right? Right. Okay, so that's different. Getting back to Judge Rakoff's question. Right. And then you have a hospital that will do it. And, again, I think that what the cases show is that you need more than just two hospitals saying one thing and doctors and hospitals saying another. But that's why, counsel, that's why I was trying to press earlier on, and I tend to agree with you that the complaint requires some connecting of the dots. But we're going to construe it, of course, in a generous fashion at this stage. And so it seems to me if it were to be sufficiently clear that these folks who went forward in January, made the decision in January, really have a reconsideration, a re-review of this decision teed up. Well, I think, and I know that it was identified in questioning about plaintiff's counsel, there is actually not any allegations that Drs. Allen or St. Clair knew about the alleged lesion in the December MRI. I think it's really vague in the complaint, and it doesn't actually say. It says, following the refusal of the evaluating physicians at two separate medical facilities, defendants still opted to do the biopsy. It does not say that they had knowledge of it. Right, but that's what we just reviewed. And so now I've said, I've looked at these paragraphs quite carefully, and so now what I'm telling you in my hypothetical is I'm connecting those dots, right, as opposing counsel has suggested that we must do. And then my question becomes, how do we really know that there was this revisiting of the decision? There seems to be, that really seems to go to the nub of it. Well, I don't think that the cases really say that there needs to be this kind of level of re-evaluation in order to meet a deliberate indifference standard. I mean, we're talking about. That's the whole theory of their case, that the original decision to order this type of biopsy was okay. Then that becomes contraindicated, and for our hypothetical, we're assuming that it isn't just a difference of medical opinion, but that at the summary judgment stage, what if they could provide evidence that nobody thinks that would have been the right kind of test? Then what? Well, I think if they have that evidence, they need to put it in the complaint. I mean, that's why you have pleading requirements. That's why. Well, she says it's contraindicated, okay. The amended, third amended complaint surely says that. It certainly makes that allegation. It doesn't state necessarily that, as you're stating now, that there would be evidence at a summary judgment stage that no doctor would. You think that she has to say, in order to have an adequate complaint, we have done a survey of all the medical doctors, and none of them would agree with this result, that she has to put that in a complaint? That is a pretty detailed complaint. I think if they had that evidence, they would need to put it in the complaint. Well, if they had it, but why does the question is whether or not they have it, why is that level of evidence? Because deliberate indifference is a high standard. You're talking about a violation of the United States Constitution, and I do not see how you get there if what you're saying is some doctor said you shouldn't do this procedure, and some other doctor said you should. You keep coming back to that and framing it as a difference of opinion. It just seems to me that you're struggling. I just want to have every opportunity to, because this is clearly very pivotal to the case, and I don't think you've answered the question. I'm sorry. So the hypothetical is, what if there isn't a difference of medical opinion? What if it turns out that there really is the situation that, given this particular patient's history, if that lesion shows up and the standard of care is don't do this type of biopsy, why isn't that deliberate indifference? That's opposing counsel's argument. Sure. I guess part of my issue is that I think there were doctors who said that this procedure was okay, and there was a hospital that said this procedure was okay. So there is a difference of medical opinion. And so I think that was my problem with your question. And going — What we know is that they went — forgive me, but you're skipping over it still. What we know is that they went forward, and that's why I said, how do we know it was teed up and there was a difference of opinion? In other words, when I say teed up, what I mean is, how do we know there was a reconsideration of the original order for this type of test? Do we have that in the record? I'm inviting you to show it to me. I mean, I think it's too vague right now to sort of say, you know, with regard to what the doctors knew in January. But what we know that they knew is that he had been complaining about pain in his abdomen. They had given him blood tests. They had given him an MRI. One MRI suggested a possible lesion. Then they gave him a second MRI, which showed no lesion or no tumor. Then he had a third MRI, which showed some lesions and some damage to the liver. So the decision is to further investigate, do a biopsy to figure it out. And I just don't see anything in the case law that would say that that is deliberate indifference. And I do see your point — I understand your point about having the reconsideration, but I don't think that the case laws require that for deliberate indifference. They don't require this sort of specific, detailed medical reevaluation. That is going to a medical malpractice. Maybe it's a medical malpractice. Maybe it's negligence. Oh, well, we should have rethought about the biopsy before going ahead if there is this lesion being shown.  As I said, there is already evidence of a possible lesion when the biopsy was first recommended, because that's what it was supposed to be figuring out, is what's going on with his liver. What care can you offer? I thought your response to the other claim that the physician was — the other claim being that a supervisor physician was responsible for denying the 602 just before Christmas, the appeal form, is that there wasn't an abuse because at that point there wasn't evidence of a lesion. Have I got that wrong? I'm talking about the — No, no, no, you're right. At that point, what the course of care that had shown was a significant course of care, significant steps in order to attempt to diagnose and evaluate Mr. Stagg's condition, so it would not have been a deliberate indifference to deny the medical appeal. That's not the answer. Sorry, but — so I'm looking — just to be clear, December 21, Dr. St. Clair denied the appeal, the 602 appeal, as an abuse of the appellate procedure, and of course the other team wants us to find that this was deliberate indifference, and I think the state's response was no, as of that time there was an indication of a lesion. But a minute ago you just said there was. No, I'm sorry. I was not saying that there was no indication of a lesion when it was denied. What I was saying was the evidence of his medical care was that he was receiving significant medical care and attempts to diagnose it, and while one MRI showed a possible lesion, the other MRI showed no tumor, and then they were going to go forward with a biopsy, and I just don't see under our case law that that would show deliberate indifference, and I see that I'm running out of time, so I wanted to defer. Mr. Judge, may I ask a question? Well, this may go to your colleagues or to you, but the question, if there's this other very disturbing allegation that — and here they do say, I'm looking at paragraph 56 and 57 and 58 of the complaint, the universal protocol for this procedure requires the patient to remain immobile in a supine position to staunch the bleeding for a period of three to four hours immediately following the procedure. So there they are saying this is universal. Then they go on to allege that the correction officers nevertheless demanded that he be put in, they didn't allow him to lie down, et cetera, and what about all that? Those allegations are about unnamed defendants who we don't know who they are, they weren't served. There are certainly no allegations that any of that is tied to any of the named defendants, and so they can't state a claim against the specific prison doctors that are named in the complaint for that specific claim. They do have the alternative allegation that the nurse should not have released, given the doctor's orders. They do. I believe that is the hospital nurse who was not affiliated with the prison, and again, no allegations that any of the prison defendants — So that would be a state law claim? That would be a state law claim. Thank you. Good morning, police and court. I'm Stephanie Roundy, and I represent the respondents, Dr. Sattah, Dr. Rusin, and Dr. Owens. Could I ask you to move the microphone down so we can hear you? Thank you. Is that better? Yep. Thank you. I had intended to address my arguments today to the element of causation, which is an essential element for a deliberate indifference claim under 1983. However, based on the discussion so far, I can address one issue regarding the biopsy, and in particular, causation at the time of the biopsy. The plaintiff's complaint alleges very few facts about causation, but one fact it does allege, and that's at ER 30, lines 19 through 20, is that at the time of this biopsy, Mr. Staggs had less than a 50 percent chance of survival due to his advanced liver cancer. It specifically alleges that he had a 27 percent chance of survival, and my understanding of the argument in this case is that the defendants denied him treatment of his liver condition, which turns out to be cancer, and one of the essential ways to develop a treatment plan once the lesion is discovered at the end of December would be to do a biopsy. The biopsy is essential to determine how the doctor should treat it because I need to know what kind of cancer it is, how advanced it is, and what the treatment options are. So my argument as to the causation element is that it's not deliberate indifference to do the biopsy because there were no other alternatives to stage the cancer and develop a treatment plan for this patient, and the facts pled in the complaint show that the decedent would not have survived regardless of what treatment was provided to him by the respondents in this case. And with that, I will turn the remaining time over to my colleague. Good morning, Your Honors. May it please the Court. Carolyn Northrup on behalf of Appellee Doctors' Hospital of Manteca. I had originally intended with my time to discuss the issue of the state law claims as those are the only claims that are pending against my client. I'm an appellate's only basis that they assert that the state law claims were inappropriately dismissed were a result of the federal claims being dismissed. There's no allegation that an actual analysis under 1367 would have been otherwise an abuse of discretion. However, in turning to the If we conclude that the federal claim was wrongly dismissed, then do you agree then the state law claim should come back to make it a more efficient litigation? Yes, Your Honor. I would. As a matter of fact, the Court didn't address the pending motions to dismiss that all of the state law claim defendants had at that time. So absolutely, at that point, I would request to renew that motion at that point in time because there are additional allegations and issues such as causation that my co-counsel referenced that were addressed and raised in those motions but were not heard and deemed moot at the time of the federal claims being dismissed. But just to briefly touch on the point with regards to the nurse, under California law, a nurse cannot discharge a patient. A physician has to do that. And regardless, that doesn't come under the deliberate indifference analysis under 1983 as those are particularly a negligence cause of action. And I see that I'm running out of time unless the Court has a specific question for my client. Thank you. Thank you, Your Honors. Could you please add a minute to the clock? Thank you. That was just one minute, not three. Thank you. Okay, that's fine. Go ahead. Sorry about that. I know it's a little disheartening to watch it tick away. It's okay. Okay. So opposing counsel said that this at best is a medical negligence claim. However, finding of medical negligence does not preclude a finding of deliberate indifference. And in fact, certain instances of medical malpractice may state a claim for deliberate indifference if the requisite recklessness is shown. And in this case, especially with the biopsy, where the risk factors with regard to the lesion was discovered before this biopsy was conducted, that states a claim that the culpability of these defendants' state of mind was reckless enough to state a claim for deliberate indifference. Moreover, some differences of medical opinion can amount to deliberate indifference, especially when the medical opinion chosen was medically unacceptable under the circumstances and the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health. In this case, this is exactly what we have. The medical opinion to proceed with this biopsy, given the three to four actually risk factors, namely that he had a cirrhotic liver, that he had lesions, that he had ascites fluid, and that this particular liver biopsy causes more bleeding than any other alternative out there. With those four risk factors, this proceeding with this biopsy was medically unacceptable. You're out of time. Thank you for your argument, counsel. Thank you. Thank all counsel for your arguments. Very helpful. Can I ask plaintiff's counsel, have you graduated now? Or you already graduated and came back to do this? Congratulations. Yes. Oh, good. Well, thanks very much for taking on the case.
judges: Rakoff, Christen, Watford